The Chief Justice
delivered the opinion of the court.
The relator claiming that his own name and the names of a large number of persons heretofore duly registered as voters/ and entitled to be registered as voters in his county, were improperly struck off and erased from t^e list by the County Commisisoners iii 1877; that'the commissioners are indisposed to meet and continue in session a sufficient length of time to afford to him, and such others, an opportunity to apply for a certificate entitling them to a reinstatement of their names upon the registration rolls, prays that the respondents may be required forthwith to meet and continue in session, from day to day, to hear applications for certificates entitling the relator and the citizens aforesaid to be re-enrolled upon the registration books according to the provisions of the law of 1877.
The respondents make return to the writ and say that the relator, before the issuing and service of the alternative writ, (his name having been struck off from the registration list,) applied to the Board of Commissioners of Jefferson county, they constituting such board, for a certificate to be presented to the clerk for the purpose of having his name restored to the list, and on making the declaration, on oath, before the board, they gave him the necessary certificate, whereupon the name of the relator was replaced upon the registration list, in pursuance of the act of 1877, and the number of his election district duly entered against his name. Wherefore, they say the relator has not now, nor had he at the time of the service of the alternative writ, any just cause of complaint against them.
They further answer, that in 1878 an alternative writ of mandamus was issued by the Judge of the Circuit Court against the Board of County Commissioners of Jefferson county, commanding them to restore to the list of registered voters the names of some fifty persons, including that of the relator, and also the names of about two thousand other persons, not designated by name, or show cause, &c.; that on the return of said writ respondents moved to dismiss it because it required them to restore a large number of persons, whose names were not given, and they were unable to designate them, and therefore could not make proper return or comply with the command of the writ in that respect; that the writ was defective in that it joined in one case a number of persons whose rights were separate and distinct, involving different and distinct issues; that upon the hearing of said motion the judge gave his decision and rendered judgment granting the motion, quashing the writ, 'and dismissing the proceedings, which judgment has not been apealed from, reversed or set aside; wherefore, they insist that all the matters complained of have been already adjudicated in a proceeding to which the relator was a party. All which the respondents set up as a sufficient return to the prseent writ of mandamus, and pray judgment, &c.
The matter coming on to be heard upon the alternative writ and the return, counsel for relator moves the court that a peremptory writ be granted. This motion is treated as a demurrer to the return of the respondents.
We first remark, as to the plea of res adjudicaba•>, that the return does not show that this relator was a petitioner or actor in the proceedings before the Circuit Judge, notwithstanding his name appears in the body of the writ; and also that the alternative writ issued by the judge was dismissed without adjudicating the rights of this relator, or other persons therein named. For either or both of these reasons -the judgment of the Circuit Judge was not a bar to these proceedings.
As to that part of the return which alleges that the name of the relator had been .duly restored to the registration list before the service of the alternative writ, it is a complete answer so far as the relator’s individual demand of registration is concerned.
The motion for a peremptory writ notwithstanding the answer, involves the sufficiency of tho alternative writ as upon demurrer.
The further grounds of objection to the prayer of the alternative writ are: "The right of any person to have his name replaced that has been improperly erased is a private right, and neither the public at large, nor the relator, have such an interest in the restoration of the names, alleged to have been improperly erased, as will entitle the relator to the peremptory writ.
“The statute affords a remedy — plain, adequate and complete — to any person whose name has been improperly erased, which should be pursued.
“It is not the duty of respondents to replace names improperly erased, and no statute gives them such power or authority.
“It is not alleged that any person, whose name has been erased, has ever at any time made his declaration under oath, required by the statute, before the respondents, and been refused a certificate that would entitle him to have his name replaced.”
It is assumed that this writ will lie upon the petition of the relator to compel the respondents to perform what is prayed as to their meeting and remaining in session so as to give greater opportunity to others to obtain the required certificates, if it should appear that the parties desiring relief have been practically denied it by the action of the Board of County Commissioners. Their duty, under the law in question, (.laws of 1877, chapter 3021, sec. 1,) is to meet at a time named to purge the registration list by striking off the names of persons who, within their knowledge or according to certain reliable information, have died or become disqualified to vote. Of course they have no right to strike off any other names, but should obtain infoimation of residence, &c., so as to locate the voters in their proper districts. A few mistakes may be inevitable, and the duty of the board is to give sufficient opportunity to correct them. When application is made by citizens and the Board refuse to hear them, or when the proper oath is made or tendered, and the board refuse or neglect to give the certificate, they are amenable to the writ of mandamus, at the suit of the aggrieved, parties severally, to compel the performance of their duty. If they have not so neglected or refused, the law will not take hold of them.
We find in this alternative writ no allegation that any of the persons included in the writ, or described therein, have not had opportunity to apply to the board, or that any of them have applied and been refused anything demanded.
It is alleged that a large number of names — a thousand or more — were improperly erased in 1877; and now, in 1880, without showing that they have applied to be restored and have been refused, the petitioner prays this writ to compel the board to give the opportunity. The board is not authorized, by statute or by Constitution, to place names upon the registration list, and the courts cannot compel them to do so. The power of the board is derived from the statute alone. No neglect or omission being properly charged against the respondents, they are not liable in this proceeding.
It is said in the alternate writ that “at their meeting in October, 1868, for the purpose of restoring names improperly stricken off, the board so conducted themselves and so exercised their power, and assumed and pretended power under the statute by holding short sessions of their board, by refusing to remain in session from day to day till their duty was performed, by formalities in conducting business, by failure of a quorum of said board to attend, and in various other ways, that it was impossible, prior to said last *185 general election, for but comparatively few persons, whose names had been so erased from said book, to have their names restored thereto by the method of obtaining a certificate as aforesaid.” This is a very serious charge, involving corrupt conduct and violation of the law on the part of members of the board; and, if an}r persons entitled to relief were denied it by direct or* indirect action of the board, there is certainly viftue enough in courts and juries and prosecuting officers in Jefferson county to punish them. But the charge fails to show who was denied a hearing, or that any person was denied it. That “comparatively few,” whose names had been erased, were able to have them restored may be true; but it is not alleged that any others than the few made the attempt, or that any were denied a hearing on application. Relator says that if respondents are compelled to meet for the purpose, about fifteen hundred such persons will promptly appear for the purpose of being restored to the lists and located in conformity to the statute. It is not alleged that the board has refused to meet at the request of any person to consider such application. The general allegation, that the board has shown a disinclination so to meet, no actual refusal to act in any case being charged, is not enough to warrant extraordinary proceedings against them.
Mandamus is never granted in anticipation of a supopsed omission of duty, however strong the presumption may lie that the persons whom it is sought to coerce by the writ will refuse to perform their duty when the proper time arrives. It is therefore incumbent on the relator to show an actual omission on the part of the respondents to perform the required act; and since there can be no such omission before the time has arrived for the performance of the duty, the writ will not issue before that time. No threats or predetermination can be considered tantamount to a default or omission of duty. High on Ex. Remedies, §12, and authorities cited.
But has this relator such a standing that he is entitled to the writ in behalf of other persons named or not named in the alternative writ?
An examination of all the books on mandamus, and all the cases decided that are accessible, brings us to the conclusion that the rule, as laid down in The People vs. Halsey, 37 N. Y., 344, is the law in such cases. Fullerton, J., speaking the unanimous voice of the Court of Appeals, says: “The writ of mandamus may, in a proper case, and in the absence of an adequate remedy by action, issue on the relation of a private individual, to redress a wrong personal to himself, or, on the relation of one who, in common with all other citizens, is interested in having some act done, of a general public nature, devolving as a duty upon a public officer or body who refuses to perform-it.” * * * “Inasmuch as the people themselves are the plaintiff in a proceeding by mandamus, it is not of vital importance who the relator should be so long as he does not officiously intermeddle in a matter with which he has no concern.” And the Supreme Court of Nevada, (11 Nev., 223,) after reviewing the leading American cases, comes to the conclusion that “when the question is one of public right, and the object of the mandamus is to procúre the enforcement of a public duty, the relator is not4 required to show that he lias any legal or special interest in the result, it being sufficient if he shows that he is interested, as a citizen, in having the laws executed.”
Most of the cases examined, in which these rules are applied, relate to the assessment and collection of taxes, opening roads, constructing bridges, canvassing of votes, and the like matters of public concern, in which the whole community is interested in having the laws enforced by public officers who have neglected or refused to perform a duty required by law. We have no doubt that in case the County Commissioners refuse to meet to perform their duties in respect to the subject of hearing applications and issuing the necessary certificates to enable people so entitled to have their names restored, when improperly erased from the registration lists, or if they perversely or designedly refuse or neglect to hold and continue their meeting when citizens claiming are, by such refusal, denied the right; or do any act- which hinders, obstructs, or prevents all citizens from obtaining their right, it is not only the right but the duty of any citizen, interested in the due performance of such duties and the execution of the laws, to demand that the laws be executed by the officers. The violation of such duties and the refusal to execute such laws affect the interests of every citizen and confer the right to demand that the proper remedy shall be applied. Each individual may. also demand the writ of mandamus for the purpose of securing his own right when it has been practically denied by the action of the board.
A thousand writs of mandamus, in as many cases of private grievance, with all the attending costs and expenses, might be a frightful thing to contemplate; nevertheless, a thousand persons wronged may each have his separate remedy, if his right is denied, at the cost of the wrong-doers.
From the views above expressed it follows that the relator has not presented such a case as entitles him to this writ.
This will dispose of the present case, but I think it may be well to examine some features of the Constitution and the registration act in reference to their effect upon public and private rights, and as applicable to the status of the parties in whose behalf this writ was prayed.
While parties may have their remedies by mandamus to enforce their right to registration, after their names have been wrongfully stricken off, it is proper to say, further, in reference to the action of a county board under the act of 1877, that by the striking off of the name of a person once registered and having had a right to vote, his right to vote cannot be lawfully impaired.
The act of 1877 must not be construed so as to deprive a legal voter of his privilege and right to vote in the district where he could vote if his name was on the roll and he was qualified in other respects. No man can be deprived of such rights but by his own act, or by due process of law. The Constitution of Florida declares expressly that every man having the necessary qualifications of citizenship, age and residence, (except persons under guardianship, &c., and such as may be excluded for crime of which he may have been convicted,) “shall be deemed a qualified elector at all elections under this Constitution,” having at the time of his registration, taken and susberibed the oath prescribed in Sec. I, Art. XIV.
The 6th section requires the Legislature at its first session to “provide for the registration by the Clerk or the Circuit Court of all the legally qualified voters in each county, and for the return of elections; and that after the completion, from time to time, of such registration, no person not duly registered according to law, shall be allowed to vote.”
The Legislature in 1868, substantially complied with this requirement. (Chap. 1625, sections 6, 7, 8.)
Chapter 3021, laws 1877, amended section 9 of the act of-1868, by providing for the division of each county into election districts, and required the County Commissioners in September, 1877, and annually on the first Monday in October, to revise the registration list in the clerk’s office and “erase therefrom the names of such persons as are known or may be shown to the satisfaction of the commissioners to have died or ceased to reside permanently in the county, or who are otherwise disqualified to vote.” This revision is *186 to be completed by the second Monday in October, and a list of the names erased to be published.
It is also provided that if any person, whose name shall have been improperly erased, shall declare* on oath that he is a citizen, &c., showing that he is a qualified voter, and shall also describe and designate his place of-residence in such county, the County Commissioners shall certify the facts so sworn to, and the clerk on production of the certificate by the voter, shall replace his name on the list of registered voters, with the date and location.
It is also made the duty of the County Commissioners to hold a special meeting on the third Monday of October, prior to every election, for the purpose of hearing complaints of persons who may claim that their names have been improperly erased from the list.
The seventh section of the act is amended by providing, among other things, that the clerk shall appoint a deputy for purposes of registration in each ‘election district, except where his office is located, and give notice of the place appointed for, registration. It is made the deputy of the clerk and deputy in each district, on application by an elector for registration, to administer to him the oath prescribed by the Constitution; and the clerk is forbidden to "register any person who fails to show satisfactorily, under oath if deemed necessary, (administered by such deputy clerk or registration officer,) that he resides in the election district in which he seeks to be registered; that ho is twenty-one years of age,” and that he has all the qualifications of citizenship and residence to be a voter.
The sixteenth section prescribes 'the oath to be taken by persons whose right to vote shall be challenged at the polls, which requires him to swear that he possesses the qualifications of a voter, and to the place of his residence, and that he has not before voted at that election.
And it further provides that if the name of the person, who has been duly registered, shall not appear on the registration list of the district, he shall be required to state under oath that he is of lawful age, his residence in the State and county; "that he was duly registered at least ten days before the election, and that he has not changed his place of residence to any district other than the one in which he was living when he registered; or if he has changed his place of residence since such registration that he notified the Clerk of the Circuit Court of the <fact of such change in accordance with the requirements of the first section of this act. He shall also be required’ to produce two qualified electors of the election district in which he oilers to vote, who shall be personally known to at least two of the inspectors, and who shall each declare under oath, that such person does live in the election district in which he offers to vote, and has resided to their knowledge in Florida one year and in the county six months next preceding the election, whereupon the vote of such person shall be received.”
I shall not question here and now the right of the Legislature to prescribe, that before being registered as a voter a person shall be required to show by his oath that he possesses the necessary qualifications, and that he is entitled to take the constitutional registration oath, and to be registered. Nor do I here question the legislative power to provide, that when the name of a person has been wrongfully erased from the list by the County Commissioners he may have his name re-enrolled by procuring the certificate oí the commissioners, that he has sworn before them that he is a qualified person, and stating where he resides, and delivering the same to the clerk. The person desiring to have his name re-entered may pursue this course if it is most convenient to him. In such case I see no object, other than convenience, in going before the county board. They merely administer an oath and certify that he has so sworn, nothing more. They make no order in the matter, and it would seem to be a mere superfluous ceremony. The oath taken before the clerk, who alone is authorized under the Constitution to register voters, would have been more convenient. The commissioners, for various reasons, may be better qualified to know what names ought to be struck off by reason of death, change of residence, or other disabilities, and have superior facilities for learning these facts by proper inquiry, but they have no power to place names upon the rolls unless to correct their own errors while the rolls are before them.
But this is not the only method by which the name of a person "improperly” struck from the registration list may be again registered. He lias lost no rights as a citizen by the "improper” action of the county board in wrongfully erasing his name. He has the same right to be registered as a voter as any other person, and should not be subjected to any greater inconvenience. Any discrimination in a statute, by which one man having equal right with another shall be subjected to greater hardships than another to obtain the same status or rights as a citizen is void. Any citizen whose name is not upon the rolls may be registered upon taking the same oath that is required of others, even if his name has been "improperly” struck oft; and the registering officer who shall refuse him registration in such ease will be guilty of a wrong. The clerk or registering officer has no right to refuse registration to any qualified citizen under the Constitution and the statutes. If the charge in the alternative writ, that the Clerk of the Circuit Court of Jackson county instructed his deputies not to register the name of any person whose name had been erased; and also, that the clerk so refused to register such person, is true, it must have proceeded from a misapprehension on the part of the clerk. Such action would not only in effect tend to disfranchise those whose names had been wrongfully erased, but also those who may have acquired the right to be registered after, having been properly struck off, as in the case of one who had gone to reside elsewhere, thus losing his right to vote, and afterward returned and acquired the right anew.
Now as to that portion of the seventh section as amended by the act of 1877, section 2, which says that "under no circumstances shall any such deputy clerk or registration officer register any person who fails to show satisfactorily, under oath, if deemed necessary, (administered by such deputy clerk or registration officer,) that he resides in the election district in which he seeks to be registered; that he is twenty-one years of age,” and that he is a citizen and a • resident, &c. This language is not to be construed to confer upon the registering officer any discretion or judicial power to determine the right. If a man offers to make oath to his qualifications the oath should be administered; and if he swears that he possesses the necessary qualifications and residence the duty of the officer is to register his name. He cannot say that lie is not "satisfied” with the evidence and reject it, for that involves' judicial action. If the man is not entitled to vote he may be punished for illegally voting, by a tribunal qualified to ascertain and adjudicate the law and facts. The registration 'officer is not such a tribunal.
The sixteenth section, amended by section 7, act of 1877, relating to an offer at the polls to vote by a person whoso name is not on the registration list of the district, requires him to make oath as to his age and residence; that he has not changed his residence since he registered, or if he has so changed his residence that he has notified the cleric of the change. "He shall also be required to produce two qualified electors of the district in which he offers to vote, who shall be personally known to at least two of the inspectors, and who shall each, declare under oath that such person does live in the election district in which he offers to *187 vote, and lias resided, to their knowledge, in Florida one year and in the county six months, next preceding the election, whereupon the vote oí such person shall be received.”
So far as this section proposes to organize a court to try a person's right to vote, composed of members, not judicial officers, who are personally acquainted with the witnesses, giving the applicant no means of obtaining witnesses, or of compelling the inspectors to acknowledge their personal acquaintance with the witnesses, and in effect -giving the inspectors a discretion to receive or reject his vote, as they may be inclined, to this extent the last paragraph of the section is void. If one has been registered and is a voter, and has not lost his qualifiactions as such voter by his own act, the erasure or omission of his name from the list will not affect his right; and on taking the oath that he was duly registered, and has the legal qualifications to entitle him to vote, his vote must be received without subjecting him to the ordeal of a trial by a court, the members of which are, by this law, to decide the case upon their own knowledge and in their discretion. Such a tribunal is not recognized but prohibited by the fundamental law.
These suggestions are not pertinent to the application for a mandamus, but the petition and the alternative writ present a condition of affairs justifying an1 examination of the statute under which this controversy arose, and which, as is well known, has given rise to much perplexity and confusion. It is deemed better thus to announce an opinion upon these features of this statute than to wait the occurrence of serious and complicated controversies which may arise, involving perhaps the personal liberty or the property and rights of citizens, and which should be avoided.
The motion for a peremptory writ of mandamus is denied. The alternative writ must be dismissed.
Mr. Justice Westcott
delivered the following opinion:
I agree with the conclusion reached that the County Commissioners may, at the suit of a citizen, be compelled to perform a public duty affecting the citizens of the county, under certain circumstances not disclosed by this alternative writ, and for this reason the writ should be denied. While I think that “the right to a free ballot is the right preservative of all rights,” yet, as I do not think this case involves the constitutional and other questions discussed, I say nothing of them. 2 Brock., 447; 6 New York, 177; 4 Barb., 56; 29 Alabama, 573; Cool. Con. Lim., 163; 17 Florida, 434.