7  263
9  208
26* 570
33* 819

FERGUS FERGUSON, APPELLANT, v. CLARENCE E. ALLEN, RESPONDENT.

ELECTIONS.—PURGING THE POLL.—ILLEGAL VOTES.—Where the court is able to purge the vote at a particular poll of the illegal votes cast, and it does not appear that the officers at the poll or the contestee of the election participated in the fraud or knew of it, the vote of the whole poll should not be rejected, but effect should be given to the unimpeached votes.

ID.—REGISTRATION OFFICER.—STRIKING NAMES FROM LIST.—Where the registration officer, under section 246, 1 Comp. Laws, 1888, after a hearing has found that certain persons are not qualified voters, and certified such names to the election judges, who have stricken such names from the jury lists, even though the judgment of such registration officer was erroneous and illegal, and the persons whose names are so stricken off on election day have offered their ballots and were in fact otherwise qualified voters, and their ballots were rejected by the judges of election because their names were not on the voting lists; *held*, that such votes so offered could not be counted because they were not cast.

ID.—REJECTION OF VOTES.—ANNULLING ELECTION.—Under section 3752, 2 Comp. Laws, 1888, which provides that no election can be annulled when contested on the ground of malconduct of the election officers of any precinct unless the rejection of the vote of such precinct would change the result of the election in the remaining vote of the county, where it does not appear whether the rejection of the vote of such precinct would change the result, the election will not be annulled.

APPEAL from a judgment of the district court of the third district. The opinion states the facts except the following: The statutes of the Territory provide that qualified voters may object in writing to the right to vote of any person upon the voting lists, and that a hearing shall be had thereon before the deputy registra-

tion officer, and if upon such hearing the deputy registrar shall find that the person objected to is not a qualified voter he shall transmit the name to the judges of election, and such judges shall strike the name so certified from the lists before the opening of the polls; that the ballot of the voter shall be delivered to the presiding judge of election, who shall, in the presence of the voter, *on the name of the proposed voter being found on the registry list,* and on all challenges being decided in favor of such voter, deposit it in the ballot box, but otherwise the vote shall be rejected.   Sections 246, 251, 1 Comp. Laws, 1888.

*Mr. Arthur Brown* and *Mr. J. L. Rawlins,* for the appellant.

*Mr. C. F. Loofbourow* and *Messrs. Zane and Putnam,* for the respondent.

MINER, J.:

The plaintiff, Fergus Ferguson, and the defendant, Clarence E. Allen, were each, respectively, candidates for the office of county clerk of the county of Salt Lake, Territory of Utah, at the August election in 1890, and the only candidates therefor.   At the canvass of the votes by the county canvassers of the precinct returns, that body adjudged that defendant, Allen, had received a majority of fifteen votes; the said plaintiff having received 3,740 votes, and the defendant having received 3,755 votes; and a certificate of election was accordingly given to the defendant, Allen, who is now in possession of the office.   The plaintiff, within the time required by law, filed his notice of contest, and now claims that there are two distinct errors in that computation,—that is: (1) In the Bingham precinct three polling places were provided by the Utah commission, but no division was

had of the registration list. The whole registration was left with the judges of each poll. That poll No. 3 in such precinct was established up the canyon, in the mountains, for the accommodation of the voters at the Brooklyn mine. At this poll forty-one ballots were cast at this election,—thirty-nine for the contestee, Allen, and two for the contestant. Thirteen of the thirty-nine votes cast for contestee, Allen, were proved to be cast fraudulently, by persons not entitled to vote, and were rejected by the trial court, thus leaving Allen's vote in this precinct twenty-six.

It is now claimed by the contestant that the court erred in not rejecting the entire vote polled at this precinct, for the reason that the whole poll was proven fraudulent, and no legal votes were shown to have been cast. The contestant also claims that he is entitled to have counted in his favor fifteen votes in the South Cottonwood precinct, which were not returned by the judges of election; and claims that the facts concerning these fifteen voters are that fifteen legal voters, whose names appeared upon the registration list, who were entitled to vote, were wrongfully stricken from the registration list by the judges of election themselves, so as to prevent their vote; that the said fifteen voters, however, tried to vote, so far as they were able to do so, and that each of them tendered a ballot, together with an affidavit sworn in due form by each of said persons offering to vote, containing the oath required by the act of congress of March 3, 1887, known as the "Edmunds-Tucker Law;" and that the judges refused to put these ballots into the box. Each of the voters caused said ballots to be preserved, and his name written upon it, identified, and brought into court, so that the ballot was cast by each of the fifteen voters as far as it was in the power of the voter to cast it. Each of these votes contained

the name of the contestant.   Counting these votes, he
would have a majority over the contestee of eight votes.
Contestant claims: (1) That the court erred in not throw-
ing out the entire ballot of the third poll of the Bing-
ham precinct, and deducting all the thirty-nine votes
from Allen's majority, for the reason that the whole of
said poll was proven to be fraudulent, and no legal votes
were shown to have been cast.   (2) The court erred in
not allowing the fifteen votes which it determined to
have been wrongfully and illegally kept from the ballot-
box in South Cottenwood precinct, and found to have
been by the votes tendered for Fergus Ferguson, to be
counted for him.

The evidence upon this case as tried in the court below
is not brought before this court by the record, and the
only question before this court on the record is whether
or not the findings of fact by the lower court justify the
conclusions and judgment of the court below, or whether
other and different conclusions of law should have been
reached upon the facts as found.   Upon these points the
court below found, among others, the following facts:
"(8) That at said poll No. 3, in Bingham precinct, said
thirteen ballots were cast by persons who were not qual-
ified electors of said precinct, but who fraudulently per-
sonated the names of persons whose names appeared upon
the registration list, who were not present to vote.   That
each of said thirteen ballots were cast, counted, and
returned for the incumbent, contestee Allen, for said
office of county clerk.   (9) That in the precinct of South
Cottonwood, in said county, fifteen different persons pre-
sented themselves at the polling place on the day of
election, and claimed the right to vote, and each ten-
dered to the judges of election a ballot for contestant
for said office of clerk of the county court, but with said
ballot tendered on affidavit, sworn to before a justice of

the peace by the persons so offering to vote, which affi-
davit contained the oath required by the Edmunds-Tucker
law; and the ballot of each of said persons was refused
by the judges for the reason that the names of none of
said persons was upon the registry list of said precinct.
That the names of each of said fifteen persons had, prior
to said day of election, been upon the registration list of
said precinct, but each of said names had been by the
judges of election stricken from said list before the open-
ing of the polls, in accordance with the directions in
writing from the deputy registration officer of said pre-
cinct. That the right of each of said fifteen persons to
vote at said election had been objected to by a qualified
voter, in writing, before said deputy registrar, and a
hearing had been had upon each of said objections after
due notice had been given each of said persons before
said deputy registrar, and said deputy registrar had
determined on such hearing that the names of each of
said persons should be stricken from the registration list
of said precinct, which said determination was erroneous
and illegal, the said fifteen persons being qualified voters;
but was duly certified to said judges, and the vote of
each of said persons was refused by said judges of elec-
tion, for the reason that the name of each had been so
stricken from the registration list."

Upon the foregoing facts as found, the trial court
found therefrom the following conclusions of law: "That
to the majority of fifteen for the incumbent, as shown
upon the face of the canvass and return, there should be
added six votes on account of the matters set out in the
fourth, fifth, and sixth paragraphs of the foregoing find-
ings of facts, and that from the majority of the incum-
bent, as thus increased, should be deducted fourteen votes,
on account of the matter stated in the third and eighth par-
agraphs of said findings, leaving the incumbent a clear

majority of seven votes out of all the legal votes cast for said office at said election. That the ballots offered to be cast for contestant in South Cottonwood precinct, as referred to in the ninth paragraph of the said findings of facts, and which were rejected by the judges, and were not in fact cast, cannot be counted, nor can any of them be counted or made available to the contestant in this proceeding. And upon the foregoing facts and conclusions, it is adjudged and determined by the court that the contestant's complaint be dismissed, and that he take nothing by this proceeding; that the incumbent was legally elected to said office of clerk of the county court of said Salt Lake county, and his right and title to said office is confirmed."

The above findings include so much only as may be material in this discussion. On examination of the eighth finding of fact, we are unable to discover that there is any error of the court in its findings of law, so far as they apply to the third poll of the Bingham precinct. It is apparent from the findings that thirteen ballots were cast fraudulently, by persons who were not qualified electors of that precinct, by personating those whose names appeared upon the registration list, but did not vote; and these thirteen votes were properly deducted from the vote of the contestee, Allen. That there was fraud practiced at this poll there can be no question; but it does not appear from the findings of fact that the incumbent, or any of the officers conducting the election, participated in such fraud, or knew of it, or that the proceedings were so tarnished with fraud, neglect, or improper conduct on the part of the officers that the result of the election was rendered so unreliable and fraudulent as to make it impossible to ascertain the actual vote from other evidence in the case. Where the result at a poll, as shown by the returns, is false and

fraudulent, and it is impossible to ascertain the actual legal vote from other evidence in the case, the vote of such poll must be wholly rejected. Paine, Elect. § 499; McCrary, Elect. §§ 488–490; *Phelps* v. *Schroeder,* 26 Ohio St. 549; *Ex parte Murphy,* 7 Cow. 153; *Lloyd* v. *Sullivan,* 9 Mont. 577, 24 Pac. Rep. 218, 227; *Whipley* v. *McKune,* 12 Cal. 352; *People* v. *Pease,* 27 N. Y. 45, 84 Amer. Dec. 242; Cooley, Const. Lim. 280; *State* v. *Hilmantel,* 23 Wis. 422. In this case the court was able, from the testimony, to purge the poll of the thirteen fraudulent votes, and give effect to the legal or unimpeached votes cast at this election. We find no error in this. We also find that this court, as well as the court below, had jurisdiction under sections 3757, 3765, Comp. Laws 1888. *Russell* v. *McDowell* 83 Cal. 70, 23 Pac. Rep. 183.

The ninth finding of fact, as to the vote at South Cottonwood precinct, and the conclusion thereon, presents a more difficult question for determination. The statute provided for a hearing before a deputy registration officer of objections to the right to vote of any persons registered. Section 246, p. 321, 1 Comp. Laws 1888, provides, among other things: "If upon such hearing the justice (by construction, deputy registrar) shall find that the persons objected to are not qualified voters, he shall, within three days prior to the election, transmit a certified list of the names of all such unqualified persons to the judges of election, and such judges shall strike such names from the registry list before the opening of the polls." Section 3751, Comp. Laws Utah 1888, reads as follows: "No irregularity or improper conduct in the proceedings of the judges, or any of them, is such malconduct as avoids an election unless the irregularity or improper conduct is such as to procure the person whose right to the office is contested to be declared elected when he had not received the highest number of

legal votes." See *Russell* v. *McDowell, supra.* This statute should be construed with reference to the laws of the United States applicable to the subject. The trial court took testimony, and made its findings as above given. It appears from the findings of fact (from which the contestant only appeals) that the names of fifteen qualified voters of South Cottonwood precinct had, prior to the day of election, been properly upon the registration list of such precinct; that on the morning of the election these names had been stricken from such list by the judges of election, in accordance with the direction of the deputy registration officer of that precinct after a notice and hearing had been given each of them; that such determination of the deputy registrar was erroneous and illegal, the said fifteen persons being qualified voters; that each of said fifteen persons presented themselves at the polling place on the day of election, and claimed the right to vote, and tendered the judges a ballot containing the name of the contestant for the aforesaid office, together with an affidavit, as required by the act of congress of March 3, 1887, and that they were refused, for the reason that their names had been so stricken from the registration list.

The question presented here is whether the judges of election should have received, or, in any event, counted, these fifteen votes, so tendered for the contestant, notwithstanding their names had been illegally and erroneously stricken from the list of voters; no challenge being interposed, as provided in section 251, 1 Comp. Laws 1888. It is apparent that, if these votes had been received or counted for the contestant, the result would have been different, and the contestant, under the findings, would have received eight majority over the vote of Mr. Allen, the contestee. The authorities bearing upon this question are somewhat uncertain and conflicting,

depending largely upon the statutes of different states. Bearing upon this question, we find in Paine on Election, § 499, the following general proposition: "Honest voters may lose their votes through criminal misconduct of dishonest officers of election. While it is well settled that the mere neglect to comply with directory requirements of the law, or the performance of duty in a mistaken manner, without bad faith, or injurious results, will not justify the rejection of an entire poll, it is equally well settled that when the proceedings are so. tarnished by fraudulent, negligent, or improper conduct on the part of the officers that the result of the election is rendered unreliable, the entire returns will be rejected, and the parties left to make such proof as they may of the votes legally cast for them. But when fraud on the part of the officers of election is established, the poll will be rejected, unless it shall prove to be possible to purge it of the fraud." In other words, the illegal and fraudulent rejection of a sufficient number of qualified electors in a precinct, which, if they had voted, would have changed the result of the election, was held to avoid the election in that precinct. *Renner* v. *Bennett,* 21 Ohio St. 431; *State* v. *Commissioners,* 17 Fla. 707; *Patton* v. *Coates,* 41 Ark. 111; *Phelps* v. *Schroeder,* 26 Ohio St. 558; *State* v. *Baker,* 38 Wis. 71; 6 Amer. & Eng. Enc. Law, 292, 334, 364, 423, 430; McCrary, Elect. §§ 423, 476, 509; *People* v. *Bell,* 119 N. Y. 175, 23 N. E. Rep. 533; *Lloyd* v. *Sullivan,* 9 Mont. 577, 24 Pac. Rep. 218, 227; *Russell* v. *McDowell, supra; People* v. *Bell,* 8 N. Y. Supp. 254; *State* v. *O'Day* (Iowa), 28 N. W. Rep. 642; *Perry* v. *Whitaker,* 71 N. C. 475; *People* v. *Canaday,* 21 Amer. Rep. 465; *Zeilar* v. *Chapman,* 54 Mo. 502.

I am unable to see the difference in the degree of fraud or miconduct presented by a case where the election officers illegally and wrongfully strike the name of

a qualified voter from the registry list, or in which they illegally and fraudulently place the names of illegal voters on the registry list. In the latter case it is held to be malconduct in the officers. While a disregard of a mandatory provision in a statute as to the conduct of an election will ordinarily avoid an election, it is generally well settled that neglect or disregard of a directory provision of a statute designed to prevent fraudulent voting, followed by actual fraud of that character sufficient in extent to throw doubt on the true result of the election, is ground for rejecting the entire vote of a precinct, provided there were no means of purging the poll. Officers of election are, like other persons, presumed to know the law, and their deliberate neglect to do their duty, or their illegal, wrongful, and fraudulent performance of the duty imposed on them to register and permit all persons having such qualifications to vote, calls for an explanation on their part. In this case it is conceded by contestee's counsel that no evidence of justification was offered before the court below to explain or justify the acts of the election officers. This omission casts suspicion upon their integrity, and with the testimony before the court was presumably sufficient, *prima facie*, to make out a case of erroneous and illegal conduct on their part, as found by the trial court. The case of *Russel* v. *McDowell, supra,* fully sustains this doctrine, and also gives construction to section 3751, Comp. Laws 1888, which is similar to the California statute.

The object of the registry law is to preserve the purity of the ballot-box, and to guard against abuses to the elective franchise, and not to prevent any qualified elector from voting, or unnecessarily to hinder or impair his privilege. This right should not be impaired by the regulation. It must be a regulation, not a destruction,

of the right. *Attorney General* v. *Common Council*, 78 Mich. 545, 44 N. W. Rep. 388; *Page* v. *Allen*, 58 Pa. St. 338; *Dells* v. *Kennedy*, 49 Wis. 555, 6 N. W. Rep. 246, 381; *Warren* v. *Board*, 72 Mich. 398, 40 N. W. Rep. 553; *People* v. *Gordon*, 5 Cal. 235; *Webber* v *Brynes*, 34 Cal. 273. So it has been held that the exclusion of legal voters through error in judgment (but not fraud) will not defeat an election, because it cannot be known with certainty afterwards how the excluded electors would have voted, and it would be dangerous to receive and rely upon voters' subsequent statements as to their intention, when unfortunately such intention was ineffectually expressed, after it is ascertained precisely what effect their votes would have upon the result. Cooley, Const. Lim. pp. 626, 780; *Newcum* v. *Kirtey*, 13 B. Mon. 515. "If, however, the inspectors of election shall exclude legal voters, not because of honest error in judgment, but willfully or corruptly, and to an extent that affects the result; or if legal voters are intimidated and prevented from voting, or for any other reasons the electors have not had opportunity for the expression of their sentiment through the ballot-box,—the election should be set aside altogether, as having failed in the purpose for which it was called." Cooley, Const. Lim. 621; *State* v. *Echols*, 41 Kan. 1, 20 Pac. Rep. 523; *Renner* v. *Bennett*, 21 Ohio St. 441; *Phelps* v. *Schroder*, 26 Ohio St. 559; *Bell* v. *Snyder*, 4 Cong. Elect. Cas. 247; McCrary, Elect. § 11; *State* v. *Commissioners*, 17 Fla. 707; *People* v. *Bell*, (N. Y.) 23 N. E. Rep. 533; *People* v. *Thacher*, 55 N. Y. 534; Paine, Elect. §§ 513, 596; *People* v. *Pease*, 27 N. Y. 63; *People* v. *Cook*, 59 Amer. Dec. 470; *Capen* v. *Foster*, 23 Amer. Dec. 648; *Ebert* v. *Wood*, 2 Amer. Dec. 437.

A proper rule in such cases is that any irregularity in conducting an election, which does not deprive a qualified

elector of his vote, or admit a disqualified person to vote,
or cast uncertainty on the result, should be overlooked
in trying title to an office.    Cooley, Const. Limt. 618.
That no legal voter should be deprived of that privilege
by an illegal act of the election authorites is a funda-
mental principle of law; but, in order for such voter to
avail himself of that privilege, he must conform to such
reasonable rules as are prescribed by law.    He must leave
nothing undone on his part that he should do in order
to bring himself within this rule.    He must see that his
name is on the registration list, and otherwise entitled
to vote.    When he has done this, he has done all that
the statute requires in this territory.

In this case it appears that each of these fifteen electors
had their names properly enrolled; that they were legal
voters, and entitled to vote at this election; that the
deputy register, without any authority of law whatever,
erroneously, and illegally ordered their names stricken
from the lists of qualified electors on the morning of the
election; that each of them went and tendered a vote
for the contestant, with an affidavit of their qualifications
as legal voters.    They were refused because their names
had been illegally and erroneously stricken from the list
of voters by order of the deputy registrar.    This illegal
act, if it was such, upon the part of the registration
officers, cannot be justified upon any pretext whatever.
The rights and wishes of all people are too sacred to be
cast aside and nullified by the illegal and wrongful acts
of their servants, no matter under what guise or pretense
such acts are sought to be justified.    This right is a
fundamental right.    All other rights, civil or political,
depend on the free exercise of this one, and any material
impairment of it is, to that extent, a subversion of our
political system.    These registration and election officers

act ministerially, or at most *quasi* judicially, and their acts may properly be reviewed and questioned in a proceeding to contest or try the title to any office made elective by the laws of the territory. *People* v. *Pease,* 27 N. Y. 45; *Gillespie* v. *Palmer,* 20 Wis. 544; *State* v. *Robb,* 17 Ind. 536; 5 Cal. 235; *People* v. *Van Cleve,* 1 Mich. 362, 53 Amer. Dec. 69; *Davies* v. *McKeeby,* 5 Neb. 369; *People* v. *Bell,* 8 N. Y. Supp. 234; *Perry* v. *Whitaker,* 71 N. C. 475; *People* v. *Canaday,* 73 N. C. 198, 21 Amer. Rep. 465.

These acts of the legislature herein quoted can properly be considered, in connection with the Edmunds-Tucker act, as applicable to this Territory in the registration of electors and conduct of elections, and should be so construed as to give every man, who has that right, an opportunity to register and vote, and to have that vote honestly counted. Section 9 of the Edmunds-Tucker law declares vacant all registration and election officers of every description in the Territory; and each and every duty relating to the registration of voters and conduct of elections, receiving and registering votes, and the canvassing the same, etc., shall, until other provisions be made by the legislature of the Territory, as hereinafter provided, be performed by and under the existing laws of the United States and of said Territory by proper persons, appointed by the Utah commission; * * * and no person shall be excluded from the polls who is otherwise eligible to vote, on account of any opinion, etc.; * * * nor shall they refuse to count any such vote on account of the opinion of the person casting the same on the subject of polygamy." The construction of this statute may be found in McCrary, Elect. § 11; 6 Amer. & Eng. Enc. Law, pp. 292, 430; *Murphy* v. *Ramsey,* 114 U. S. 15, 5 Sup. Ct. Rep. 747; *Buchanan* v. *Manny,* 2 Ells. 287. Section 2007 of the Revised Statutes of the

United States, relied upon by counsel for the contestant, might be a potent factor in the determination of this question had not the Supreme Court of the United States declared it unconstitutional in *U. S.* v *Reese,* 92 U. S. 214. I am satisfied that no case can be found in the books which presents a stronger appeal in behalf of justice to an elector than is presented by the record in this case. Yet the law seems to be settled that, unless the ballot is actually cast, it cannot be counted in a local election contest. Justice CAMPBELL, in his opinion in *People* v. *Cicott,* 16 Mich. 311, says: "There is no case, so far as I have been able to discover, under any system of voting by closed ballot, which has held that any account can be taken of rejected votes in a suit to try title for office."

Judge Cooley in his work on Constitutional Limitations, pp. 626, 627, says: "We have seen that no evidence is admissible as to how parties intended to vote who were wrongfully prevented or excluded from so doing. Such a case is one of many without a remedy, so far as candidates are concerned." And in such cases the injured parties have their right of action against the registration officers who violate their oaths, and maliciously or corruptly strike the name of a legal voter from the registration list, or maliciously or corruptly refuse to place such names upon the register; and such parties may be made liable in a civil action in damages, or prosecuted criminally for such corrupt, willful, and malicious acts. *Ashby* v. *White,* 2 Ld. Raym. 938; *Gillespie* v. *Palmer,* 20 Wis. 544; 6 Amer. & Eng. Enc. Law, pp. 306, 308, 443; *Hardesty* v. *Taft,* 23 Maryland 513, 87 Amer. Dec. 584; *Jenkins* v. *Waldron,* 11 Johns. 114; *Patterson* v. *D'Auterive,* 6 La. An. 467, 54 Amer. Dec. 564; *Caulfield* v. *Bullock,* 18 B. Mon. 494; *Morgan* v. *Dudley,* Id. 693. By section 3752, Comp. Laws 1888, it is enacted that when any

election held for an office exercised in and for a county is contested on account of any malconduct on the part of the board of judges of any precinct election, or any member thereof, the election cannot be annuled and set aside upon any proof thereof unless the rejection of the vote of such precinct or precincts would change the result as to such office in the remaining vote of the county. Also, see sections 3751-3762, Comp. Laws 1888. It is contended with much reason that under the provisions of these statutes no vote can be counted for a candidate that is not actually cast for him while the polls are open, and that the power of this court is limited to the rejection of such fraudulent votes as were actually cast, or to the rejection of the vote of precincts on account of fraud in the officers conducting the election in cases where it appears that the rejection of the vote of such precinct would change the result as to such office in the remaining vote of the county. The full vote of South Cottonwood precinct is not reported or found by the trial court, therefore we are unable to determine whether or not the rejection of the entire vote of South Cottonwood precinct would change the result of the election for this office; therefore, upon the whole record, we find no errors. The findings and judgment of the court below are affirmed, with costs.

ZANE, C. J., and BLACKBURN, J., concurred in the result.