## GEORGE W. YOUNG, RESPONDENT, *v.* J. H. DEMING, APPELLANT.

ELECTIONS.—BALLOTS CAST.—WRONG BOX.—Where it appears that two ballot boxes were placed side by side, one for city tickets and the other for county tickets and by mistake several county tickets were placed in the city ballot-box, *held,* that in spite of an agreement between the candidates that such tickets should not be counted, they ought to have been counted.

ID.—BALLOTS NOT COUNTED.—RESULT.—Where ballots which ought to have been counted in the result have been rejected in such numbers that if cast for the contestant they would have changed the result, yet where the evidence is uncertain as to which candidate received the ballots, the return of the judges of election will not be disturbed.

ID.—COUNTING BALLOTS.—MISTAKE IN BOX.—While it is true that ballots not cast cannot be counted, whatever the reason of their rejection, yet if the ballots are actually cast but by mistake placed in the wrong box, they should have been counted in the result.

APPEAL from a judgment of the district court of the third district. Hon. Charles S. Zane, judge. The opinion states the facts except the following sections of the statute:

Sec. 3750, 2 Comp. Laws of 1888: The right of any person declared elected may be contested for any of the following grounds: 1. For malconduct on the part of the board of judges or any member thereof. 2. Non-elegibility of the person elected. 3. Misconduct on part of person elected in giving or offering a bribe or committing any other offense against the elective franchise. 4. On account of illegal votes.

The above are the only grounds specified, and by section 2998, 2 Comp. Laws of 1888, this statute is made exclusive. Section 3751: No irregularity or improper conduct in the proceedings of the judges, or any of them, is such malconduct as avoids an election, unless the irregularity or improper conduct is such as to procure the person whose right to the office is contested to be declared elected when he had not received the highest number of legal votes.

The sections of the statute as to the canvass and return of the votes by the judges of election are found at sections 253 to 260, 1 Comp. Laws of 1888. They do not appear to contemplate the counting of any ballots not in the box.

*Messrs. Brown and Henderson*, for the appellant.

*Messrs. Williams and Van Cott*, for the respondent.

MINER, J.:

This is an appeal from a judgment in favor of the plaintiff and contestant against the defendant and contestee in an action brought under the special statute for contesting elections, and brought in pursuance of that statute. The facts of the case are substantially that Mr. Young, the respondent, was running upon the Democratic ticket for county treasurer of Summit county, and Mr.

Deming, the appellant, was running on the Liberal ticket for the same office. Young received 665 votes and Deming received 670. Young claims and alleges that seven votes were cast in two precincts in Coalville that should have been counted for him, and that by mistake were not so counted, and that, adding that seven to his number, would have made him two majority. The court found some of the facts with him. On an examination of the record we find this to be the status: On the same day that the general election was held in November, 1892, a special city election was held. The special city election being distinct from the other, a separate and distinct ballot was provided at the two polls for the city election. Before the election was opened it was agreed by all the judges of election and by all of the parties that in case of a mistake in putting a ballot into the wrong box it should not be counted. This was acquiesced in by all representing the three political parties. It appears that the two boxes were placed on a table, and the tickets with the names of the candidates for the city offices on them were placed in one box, which was termed the "city box," and the other tickets with the name of the candidates for the county offices were placed in another box, designated the "county box." It appears that six votes or six county tickets were received by the judges and placed in the city box, and six city tickets were placed in the county box. After the polls were closed the judges counted the votes and found six county tickets in the city box, and six city tickets in the county box, and they were destroyed in accordance with the agreement previously entered into. The remaining votes were all counted and canvassed by the judges of election, and their returns made, signed, and forwarded in accordance with law. The testimony shows that all the tally sheets and ballots, including the six destroyed, exactly corresponded when the votes were counted. The number of votes cast in each box

did not fall short or exceed the number found on the tally sheet.

Under our system of secret ballot the voter is required to place his ballot in an envelope, and thus present it to the judges of election, who shall deposit it in the ballot box in the presence of the voter. The judge of election has no right to examine the ticket or open the envelope containing it for that purpose. There being two boxes at each poll,—one for county officers and one for city officers, —the judges found it difficult to determine into which box to deposit the ticket, and as a consequence it was frequently announced at the polls, and by those near it, that each elector should designate to the judges of election when offering his ballot which ballot was for county and which for city officers. Notwithstanding this precaution taken by all the judges, it is apparent that six county votes were placed in the city box and six city votes were placed in the county box through the mistake of the voters, or the judges of election. It is not contended that this mistake was through the fraud of the election officers, and the testimony clearly exonerates them from all intentional wrong in the matter.

The first question to determine is whether these ballots were placed in the wrong box by the fraud of the voter or mistake of the judge in depositing the ballot. If it was done through the fraud of the voters the ballots should not be counted; if through the mistake of the judge or voter they should be counted, provided there is sufficient evidence shown to make it certain that the name of the respondent was upon those ballots when cast, and the intentions of the voter casting them can be ascertained with reasonable certainty. The statement of the facts seems to refute any presumption of fraud on the part of the electors. The poll lists corresponded with the whole vote polled at each precinct. The city votes in the county

box and the county votes in the city box exactly agree with the poll lists. It is not probable that any elector would vote two city or two county tickets, and have one placed in each box, with the expectation that both would be counted for his candidate in the face of the admonition given at the polls that such ballots would be thrown out, and there was no excess or shortage of votes in either box. It is evident that the ballots were in some mistaken manner intercharged by the voter or judge.

It is true that this court held in the case of *Ferguson* v. *Allen,* 7 Utah, 263, 26 Pac. Rep. 570, that unless a ballot is actually cast it cannot be counted in a local election contest, and we still believe that to be the settled rule of law. In that case the votes were offered, but were rejected because the names of those offering to vote were not upon the registration list. We also approve the decision of Mr. Justice Campbell (*People* v. *Cicott,* 16 Mich. 311), when that learned jurist says: "There is no case, so far as I have been able to learn, under any system of voting by close ballot, which has held that any account can be taken of rejected votes in a suit to try title for office." But these six ballots were cast by qualified electors. They were each handed to the judge, and each placed in the wrong box by him. There is nothing in the evidence that tends to show fraud by any one. In the absence of proof of fraud it is more in accordance with sound principles to account for the error on the theory of mistake than that of fraud. In the absence of circumstances to the contrary, the presumption of law is that the officers performed their duty. In the case of *People* v. *Bates,* 11 Mich. 362, it was held that where a city and state election were both held at the same time, and under charge of the same inspectors, and seven city ballots were found at the closing of the polls in the state box, and the circumstances of the case made it reasonably certain that

these ballots were in good faith put in by electors who did not put in other ballots for city officers at the same election, it was held that they were properly counted by the inspector. It was also held in this case that the elector should not be deprived of his vote, either by mistake or fraud of the inspectors or by the honest mistake of the voter in depositing the ballot in the wrong box, if the intent of the voter can be ascertained with reasonable certainty. Payne, Elect. § 446.

The remaining question is one of much more difficulty than the one last under discussion. We have found that the votes cast under the circumstances shown should have been canvassed, and counted, and not thrown out and destroyed under the agreement and by mutual consent of all the political parties and committees represented there. The six county votes found in the city box after a canvass had been had of the county votes were not counted, but, as we have seen, were destroyed by one of the judges of election. Had these votes been cast and counted for the respondent Young, he would have had one majority. The question is, did these six county ballots have the name of George Young upon them? If they did, and this fact is made to appear by clear proof, then Mr. Young should be declared elected to the office of county treasurer of Summit county. If this fact is left uncertain or doubtful, then the court should not disturb the result as announced by the judges of election. It appears from the testimony in the record that these six county ballots were not canvassed by the judges of election, nor were such tickets seen by all or any two of the judges. By no testimony in the record does it appear that any witness or judge saw the name of Mr. Young upon either of these ballots, nor does it sufficiently appear that Mr. Young's name was or was not scratched from any of these tickets. It does appear that Mr. Young

14

was a candidate for the office of county treasurer running on the Democratic ticket. Mr. Rhead says he heard Mr. Callas say when looking over the city box, "Here is another straight Democratic ticket," and the ticket was thrown away. Witness also saw one of these county tickets that was thrown out, and read it through. Saw Mr. Rawlin's name upon it, and saw there was no scratches on it, but did not notice the name of any one else on it. Did not stop to read the names of the various officers on it, but simply saw no scratches on that ticket. Mr. Ball saw Mr. Callas take out a county ticket and remark, "Here is one," rubbed it in his hands a moment, and threw it down on the floor. Witness saw no name upon it. Could not say whether Callas held it long enough to read it or not. Does not recollect Callas saying it was a Democratic ticket. Thinks six tickets were thrown out in accordance with previous arrangement.

Mr. Callas, one of the judges of election, testifies that he found six straight Democratic county tickets in the city box, which were thrown out. Does not remember saying at any time when he took out the tickets that they were Democratic tickets. Saw no scratches on any of them. Has no recollection of looking at any of the names on the tickets. Does not know whether Young's name was out or in on the tickets. Would suppose it was on. Does not remember whether Young's name was scratched that day; would not say. James Salmon was one of the judges of election at poll 2. Found one county Democratic ticket in the city box. Cannot say whether it was scratched or not. Did not notice, nor read names. Cannot say whether Mr. Young's name was on it or not. Simply noticed the heading was Democratic. Cannot say what the vote was on treasurer. Mr. Dale says he saw a Democratic county ticket in the city box. Could not say whether it was

scratched or not. Did not look it through. Mr. Wright saw a Democratic ticket that was thrown out. It was not scratched, to his knowledge. Mr. Salmon saw Mr. Callas pick out a ticket, but did not hear him say it was a straight Democratic ticket. Had no opportunity to see the tickets, or read them, although close by. Mr. Callas would pick them out, crumple them up, and say, "Here is another ticket in the wrong box." They were destroyed without reading. No recollection of hearing any judge say they were straight Democratic tickets. Mr. Callas would open them just far enough to see the heading, and some he did not open at all. He could not read the tickets,— not time to read them. The tickets were counted by candle light.

Mr. Smith was present when Mr. Callas picked the county tickets out of the city box, and saw what was done with them. He could not say whether they were Democratic or Republican or Liberal tickets, although he says he had a better chance to know than any one else. That Mr. Callas took no time to read the tickets, or see anything more than the heading. That Callas doubled up the tickets, and laid them on the table, with no opportunity to read them. The other judges did not handle these county tickets. Frequently heard some one say one was a Republican ticket. Callas did not hold the tickets long enough to read the names on them. Does not think he took the pains to tell whether the names were scratched out or not. Mr. Fisher saw Callas take a county ticket from the city box, and said, "Here is one of them," and ground it up in his hand, and threw it on the floor. Callas did not take time to read the ticket. Witness thinks there were only two county tickets in the city box. There was no time to read the ticket. Callas only had time to look at heading. Mr. Hopkins saw Callas pick out the first county ticket, look at the heading, crumple it up, and throw it

away. Could not have read the ticket through. None of these county tickets were passed to the other judges. They had no opportunity to handle or inspect these tickets to see what names were on them. Some tickets were not opened at all.

It will be seen from this synopsis of the testimony that there is very much uncertainty thrown around the character of these tickets. If it be conceded that they were all Democratic tickets, still it is a mere matter of conjecture as to whether Mr. Young's name was printed thereon, or whether his name was scratched or not. No witness has testified that Mr. Young's name was on these tickets, nor does it sufficiently appear that if his name was on these tickets that one or more of them may not have been scratched off. Many scratched tickets were found in the box, although the particular character of the tickets does not appear. We know from common experience that those who do vote are usually unwilling that the character of their votes be made public, and that whenever there is an investigation as to the actual vote cast it is almost certain to bring about prevarication and uncertainty as to what the truth is; and while in this case before us no special reasons exist for casting reflctions upon the truth of those who participated in the election, yet it is deemed unwise to lay down any rule by which the certainty and accuracy of an election may be jeopardized by the reliance upon any proof affecting such results that is not of the most clear and conclusive character.

The temptation to actual fraud and corruption on the part of the candidates and their political supporters is never so great as when it is known precisely how many votes it will take to change the result, and men who are willing to sell their votes before election will quite as readily sell their testimony afterwards, especially as the means of detecting perjury and falsehood is not always at

hand until after the wrong sought to be accomplished by it has become successful, and the honest will of the people has been thwarted.    In *People* v. *Sackett*, 14 Mich. 320, the court holds that the returns of the inspectors is *prima facie* evidence of the result of an election, and that, where the ballots have not been preserved in the manner required by law, but have been left in an exposed condition, or destroyed, the presumption that would otherwise exist of their correctness is not raised, and the court may properly be governed by the returns, unless fully convinced by proof of the integrity of the ballot.    These ballots having been improperly destroyed, and the judges not having certified that they were cast for Mr. Young, we think the evidence that these six ballots were cast for Mr. Young is insufficient to justify that finding, and that the judgment entered in favor of the plaintiff and contestant should be reversed, with costs, and the case remanded for further proceedings.

SMITH, J., concurred in the judgment of reversal.

BARTCH, J., dissented.